UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------ X

JOSE VILLAR,

    Petitioner,

                                        05 Civ. 3230/
-against-                                  03 Cr. 1136

**OPINION AND ORDER**

UNITED STATES,

    Respondent.
------------------------------ X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

       Petitioner Jose Villar ("Villar" or "Petitioner") brought this petition dated March 14, 2005, pro se pursuant to 28 U.S.C. § 2255 to vacate, set aside, or a correct his sentence of 41 months in prison for using the telephone in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. Villar challenges his sentence on the grounds that his counsel was ineffective for failing properly to investigate his case because his counsel never checked the tape recordings for adequate evidence against Petitioner. (Pet. Mem. at 4.)[1] Villar also states his counsel misled him about his potential sentence, thereby inducing Villar to accept a plea bargain on a crime he did not commit. (Pet. Mem. at 2-4.)[2] Villar also asserts, in his Supporting Affidavit dated March 14, 2005, that he was confused about his right to appeal because although the Court advised him that he could file a notice of appeal and get another lawyer or have one assigned, he was not advised

---

[1] Petitioner explains that he did not make a drug arrangement or speak about drugs on the telephone. (Sup. Aff. at ¶ 10.)
[2] Petitioner asserts that his lawyer lied to him when he warned that if Villar went to trial he could receive a 7 to 15 year sentence and claims that he "became aware of this lie, when he found out that the maximum penalty for a use of a telephone conviction [sic] with committing [sic] a drug offense . . . is 4 years of imprisonment, and the maximum of a 1 year supervise release." (Sup. Aff. at ¶ 7.)

1

that he did not have to pay for the lawyer, and thus did not file a notice of appeal. (Sup. Aff. at ¶¶ 3-5.) Villar also claims that because of the ineffective assistance of counsel, compounded by his limited understanding of the English language and the American legal system, he did not knowingly and voluntarily agree to the terms of his plea agreement. (Id. at ¶ 6.) The petition is denied for the reasons stated below.

**BACKGROUND**

On September 4, 2003, the Petitioner was charged in a complaint with conspiracy to possess and distribute five kilograms or more of cocaine. (Gov. Opp. Letter of July 11, 2005, Ex. A.) On September 23, 2003, a grand jury returned Indictment 03 Cr. 1136, which charged Villar with one count of conspiracy to possess with intent to distribute five kilograms and more of cocaine in violation of 21 U.S.C. § 846. (Gov. Opp. Letter, Ex. B.) Petitioner does not deny that between November 2003 and February 2004, he met with the Government in three proffer sessions in order that the Government might evaluate his position and make appropriate prosecutorial decisions with regard to his role in the conspiracy. (Gov. Opp. Letter at 4-5; Petitioner's reply memorandum of August 8, 2005.)[3] Thereafter, the Government, on March 1, 2004, offered Villar a plea agreement ("First Plea Agreement") in which he would plead guilty to an information charging a "telephone count" in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2,[4] and would avoid facing trial for conspiracy to distribute five kilograms and more of cocaine in violation of 21 U.S.C. §841(b)(1)(A) (which carried a mandatory minimum term of ten years and possible guideline sentence of 121-151 months without any enhancement). (Gov. Opp. Letter, Ex. D at 1.) On March 3, 2004, the Petitioner and his attorney signed the plea agreement but during his plea allocution, Villar did not admit that he had knowledge during his telephone

---

[3] In the Proffer Agreement signed by Villar before the proffer sessions, he agreed that any statement he made in these sessions could be used against him at any stage of the criminal proceeding.
[4] The maximum statutory term of imprisonment for this charge is four years, and there is no statutory minimum.

conversations that he was putting parties together for a drug transaction, and a trial date was scheduled. (March 3, 2004 Tr. at 16-34.)

On April 27, 2004, the jury returned a superseding indictment, S2 03 Cr. 1136, charging Villar with conspiracy to distribute five kilograms and more of cocaine in violation of 21 U.S.C. § 812, 841(a)(1), and 841(b)(1)(A) and with five counts of use of a telephone in committing a drug offense in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. (Gov. Opp. Letter, Ex. F.) On June 14, 2004, when the parties appeared for trial, Villar elected to sign another plea agreement rather than go forward with the trial. ("Final Plea Agreement," Gov. Opp. Letter, Ex. G.) Under the terms of this Plea Agreement, Villar agreed to plead guilty to any of the five telephone counts in violation of 21 USC §843(b) and 18 USC §2, and in return, the Government agreed to dismiss the other four telephone charges and the conspiracy charge. (Id. at 1.) Yet again Villar did not allocute to his guilt regarding the telephone crime, and the case was scheduled for trial. (June 14, 2004 Tr. at 41.) A jury was selected but not sworn in (Id. at 47, 130-138.) Prior to the empaneling of the jury, the Court conducted a preliminary evidentiary hearing to ensure Villar was advised adequately prior to the proffer sessions that his statements could be used against him. (June 14, 2004 Tr. at 43-111; June 15, 2004 Tr. at 113-129.) At the end of the hearing, Villar requested another opportunity to plead guilty to a telephone count under the conditions of the Final Plea Agreement. (June 15, 2004 Tr. at 131-137.) The defendant was then sworn in and the Court conducted an extensive allocution during which Villar admitted that he had knowingly used the telephone to further a narcotics transaction between Kiki and Maximo Sanchez, and acknowledged that he was waiving his right to appeal or litigate, under 28 U.S.C. § 2255 or § 2241, any sentence within or below the Guidelines Sentencing Range of 41 to 51 months. (June 15, 2004 Tr. at 137-141; see also Final Plea Agmt.

3

at 3, Gov. Opp. Letter, Ex. G.) Because this Court was not satisfied that Villar had acknowledged he was aware that the person on the telephone call who would receive the narcotics intended to distribute them, an additional allocution was conducted on June 17, 2004, at which Villar admitted that he knew that person was not receiving the narcotics for his personal use. (June 17, 2004 Tr. at 5-7.) On September 15, 2004, in accordance with the Final Plea Agreement, this Court sentenced Villar to 41 months in prison, the lowest end of the stipulated Guidelines Sentencing Range. (September 15, 2004 Tr. at 4.)

On March 18, 2005, this Court received Villar's petition pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside, or correct his sentence. The Government has filed a letter in opposition to Villar's petition dated July 11, 2005, and on August 8, 2005, Villar filed a reply memorandum.

**STANDARD OF REVIEW**

Since Petitioner is proceeding pro se, his submissions will "be liberally construed in his favor," (Simmons v. Abruzzo, 49 F.3d 83, 87 (2d. Cir. 1995) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)), and read "to raise the strongest arguments that they suggest," Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (citation omitted).

Section 2255 of Title 28 of the United States Code (Section 2255) provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

"[P]risoners seeking habeas relief must not only prove that constitutional violations occurred at trial, but also that such errors caused substantial prejudice or a fundamental miscarriage of justice." Ciak v. United States, 59 F.3d 296, 301 (2d Cir. 1995)

Ineffective assistance of counsel claims "are appropriately litigated in the context of a collateral challenge in the district court and not on direct appeal . . . because the trial record is not developed precisely for the object of litigating the ineffective assistance claim, but instead is devoted to issues of guilt or lack of guilt." Zhang v. United States, No. 04-cv-3261, 2005 U.S. Dist. Lexis 28404, at *8-9 (E.D.N.Y. November 18, 2005), citing Massaro v. United States, 538 U.S. 500, 504-505 (2003).

## DISCUSSION

**Villar's Waiver of His Right to Appeal**

Villar entered into a plea agreement in which he agreed that he would "not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the stipulated Guidelines Sentencing Range of 41 to 51 months . . . ." (Final Plea Agmt. at 3, Gov. Opp. Letter, Ex. G.) Villar confirmed this waiver during his plea allocution. (June 15, 2005 Tr. at 141.)

It is widely recognized that a defendant's waiver of a right to appeal or litigate post-conviction a sentence within a stipulated sentencing range is enforceable, as long as the waiver was knowing and voluntary. See United States v. Chen, 127 F.3d 286, 289-90 (2d Cir. 1997); United States v. Djelevic, 161 F.3d 104, 106 (2d Cir. 1998). Allowing a defendant to escape the terms of a carefully bargained agreement simply by appealing the subsequent sentence would render the entire process "meaningless." United States v. Monzon, 359 F.3d 110, 117 (2d Cir. 2004). Thus, a waiver is enforceable if "the record clearly demonstrates that the waiver was both

5

knowing (in the sense that defendant fully understood the potential consequences of his waiver) and voluntary." (Id. at 116) (quoting United States v. Ready, 82 F.3d 551, 557 (2d Cir. 1996))(internal quotation marks omitted). However, even a defendant's knowing and voluntary waiver may be unenforceable if any act of ineffective assistance of counsel led to the waiver. (See id. at 118-19); Djelevic, 161 F.3d at 107. Thus, Villar's waiver of his right to litigate his conviction is binding absent proof in the record that his plea or waiver was not knowing and voluntary, or a showing that Villar's counsel was ineffective.

Prior to accepting Villar's plea on June 17, 2004, this Court placed Villar under oath twice and received assurances both times that he was competent to enter a plea and that he was fully satisfied with his attorney and the advice and assistance he had received from him. (June 14, 2004 Trial Tr. at 8; June 15, 2004 Trial Tr. at 138.) Villar twice stated that he entered into the plea agreement "voluntarily and freely," that it had been read to him in Spanish, and that no one had forced him to enter into the plea agreement or offered any promises to him other than those contained in the plea agreement. (June 14, 2004 Trial Tr. at 7-9; June 15, 2004 Trial Tr. at 138-39.)[5] Villar then further acknowledged that he understood that by the terms of his agreement, he would not appeal or otherwise litigate any sentence within the stipulated 41 to 51 month guideline range (June 14, 2004 Trial Tr. at 13-14; June 15, 2004 Trial Tr. at 141.) Villar also acknowledged that he was pleading guilty because he was guilty, and not for any other reason. (June 14, 2004 Trial Tr. at 18; June 15, 2004 Trial Tr. at 153-54; June 17 Tr. at 5-8.)[6] Based on his statements at these plea hearings, this Court concludes that Villar pleaded guilty

---

[5] Villar also acknowledged that he understood the interpreter easily (June 14, 2004 Tr. at 2; June 17, 2004 Tr. at 3), or that he did not need one (June 15, 2004 Tr. at 114.)

[6] The Court was not entirely satisfied with Villar's plea allocution of June 15, 2004, and brought him back for further questioning on June 17, 2004, at which point Villar stated clearly that he understood the drugs were to be used for sale and not for personal use. (June 17, 2004 Tr. at 7.) The Court also asked Villar, "you're not [telling the Court this information] because you're afraid of me; is that right? You're not telling me this just to please me, are you?" to which Villar responded that he was telling the court "what I knew." (Id. at 8.)

knowingly and intentionally and that Villar did agree knowingly and voluntarily not to appeal or further litigate his conviction or his sentence if the sentence was within the stipulated range.

**Ineffective Assistance of Counsel Claims**

Petitioner asserts that his counsel was ineffective, thus violating his right to counsel, and that this ineffective assistance induced him to make a plea of guilty that he would otherwise not have made. The Second Circuit held in United States v. Monzon that:

> "[W]e reject the notion that an appeal waiver becomes unenforceable simply because a defendant 'claims' ineffective assistance of counsel. The appeal waiver would be unenforceable if the record of the criminal proceeding revealed that the claim that the waiver was the result of ineffective assistance of counsel was meritorious. But if the record on appeal shows that the claim lacks merit, the appeal should be dismissed because the waiver should be enforced."

359 F.3d at 118-19 (citations to record omitted).

To establish a claim for ineffective assistance of counsel, petitioner must meet the two requirements established in Strickland v. U.S., 466 U.S. 668 (1984). Villar must show that (1) his counsel's performance was deficient, and that (2) counsel's deficient performance prejudiced the defense. (See id. at 687.) The "proper standard for attorney performance is that of reasonably effective assistance." (Id.) "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (Id. at 689.)

1. Petitioner Claims Counsel Failed to Conduct Complete Discovery

First, Petitioner claims that counsel failed to obtain complete discovery from the Government, and therefore did not allow him the benefit of a full analysis of the evidence against him. (Pet. Mem. at 3, 12-13.) Specifically, Villar contends that his counsel never checked the Drug Enforcement Agency's audiotapes of his conversations to verify if the evidence incriminated him. (Pet. Mem. at 4.) However, in his reply to the Government's Opposition

7

Letter, Petitioner does not deny that he attended proffer sessions at which petitioner and his counsel were provided transcripts and translations of all the tape recorded telephone conversations of Petitioner, and that those recordings were played to Petitioner and his counsel. (See Gov. Letter, at 4-5.)[7] Thus the claim in the petition that his lawyer never had discovery or heard the audiotapes has been abandoned.

Villar also claims that his counsel was ineffective because, had his counsel more carefully compiled and analyzed the evidence, it would have been clear that Villar did not participate in an illegal conversation. (Pet. Mem. at 13.) Petitioner contends that because he did not make a drug arrangement, and because drugs were not mentioned in the telephone conversation, he is not guilty of a violation of 21 U.S.C. §843(b) and 18 U.S.C. §2. However, Petitioner's argument shows a present lack of understanding of the scope of a telephone count. It is not necessary to arrange a transaction or mention drugs in a telephone conversation to violate section 843(b) of title 21. That section reads as follows: "It shall be unlawful for any person knowingly and intentionally to use any communication facility in committing or in causing <u>or facilitating</u> the commission of any act or acts constituting a felony" under federal narcotics law. 21 U.S.C. § 843(b)(emphasis added). Villar did not have to arrange a drug deal or mention drugs during the telephone conversation to violate Section § 843(b); he merely had to use the telephone and, by that use, knowingly and intentionally facilitate the commission of a drug felony. He admitted in his allocution that in his telephone conversation he was knowingly assisting Maximo Sanchez to get in touch with Kiki so that Sanchez could buy drugs for non-personal use. (June 17, 2004 Tr. at 5-7.) Since Petitioner's admitted conduct did indeed violate 21 U.S.C. §843(b), and he does not deny that he had previously admitted such conduct during his proffer sessions,

---

[7] Petitioner also did not deny that after hearing the tape recordings he had acknowledged that he had knowingly used the telephone to facilitate a narcotics transaction. (Id.)

8

his lawyer did not provide him with ineffective advice in advising him to accept a plea to the telephone count.

## 2. Petitioner Claims Counsel Misrepresented His Potential Sentence and Induced Him to Plead Guilty to the Telephone Count

Villar next argues that counsel misrepresented the sentence he could face if convicted at trial. (Pet. Mem. at 5). He claims counsel's warning that he could face 7-15 years in prison if convicted was a lie meant to coerce Villar into a plea. (Pet. Mem. at 5). However, had Villar been convicted on Count One of the Superseding Indictment (the narcotics conspiracy), he would have faced a mandatory minimum of ten years (120 months) and a maximum sentence of life imprisonment. His sentence under the U.S.S.G. guidelines would have been 121 to 151 months under U.S.S.G. § 2D.1(Level 32) and if he took the stand and was found to have committed perjury, 151 to 188 months, a possible sentence of over 15 years. If he had subsequent to trial qualified for a lesser sentence under 18 U.S.C. § 3553(f), he would have faced a sentence of about 7 years. The telephone count, to which Villar ultimately pleaded guilty in the Final Plea Agreement, carried a four-year statutory maximum sentence (with no minimum) upon conviction. Counsel's representation in the plea bargaining process and Villar's Final Plea Agreement clearly resulted in substantially less jail time for Villar than he would have gotten had he been convicted after trial of conspiracy to possess and distribute five and more kilograms of cocaine. Counsel's advice as stated by Petitioner as to his potential sentence at trial and the potential sentence offered in the plea deal cannot be found to be incorrect, and does not constitute ineffective assistance of counsel.[8]

---

[8] Petitioner's suggestion that counsel's "threat" of 7 - 15 years related to the telephone count (Supp. Aff. at ¶ 7) makes no sense since Petitioner admits that counsel was advising he plead to the telephone count instead of going to trial on all of the counts, including the conspiracy charge. (Pet. Mem. at 1-2, 11.)

9

Villar contends that he continuously insisted he wanted to prove his innocence at trial, only to be intimidated by the 7-15 year sentence counsel warned could ensue. (Pet. Mem. at 2). Yet Villar's claim that he was somehow pressured into accepting the plea is contradicted by petitioner's repeated indications that he was happy with his representation and was not forced by anyone to plead guilty. (June 14, 2004 Trial Tr. at 9; June 15, 2004 Trial Tr. at 139.) Eviscerating the entire exchange of a plea bargain simply because the defendant "claims" counsel was ineffective, where there is no evidentiary support for the validity of the claim in the record or in the motion papers, would make the entire plea allocution process worthless. See Monzon, 359 F.3d at 118-119. On at least two separate occasions, Villar had the opportunity to express dissatisfaction with counsel, and he failed to do so. (June 14, 2004 Trial Tr. at 8; June 15, 2004 Trial Tr. at 138.) Not only has Villar failed to provide any evidentiary support for his general claim that he was coerced into accepting the plea agreement, he was appropriately advised of the alternative sentences he was facing at this stage of the prosecutorial proceedings. Therefore his claim of ineffective assistance of counsel in relation to the plea agreement or the entry of his plea is without merit.

Petitioner claims counsel was unprepared for trial, and convinced Petitioner to confess to a crime he did not commit in order to spare counsel the effort of going to trial. (Pet. Mem. at 12). Petitioner points to no evidentiary facts to support these conclusory claims about his counsel. Accordingly, these unsubstantiated claims about his counsel are dismissed.

### 3. Villar Claims That He Was Not Properly Informed of His Rights on Appeal

In the Affidavit supporting his §2255 Motion, Villar claims that he was not properly and adequately informed by the Court of his right to appeal. (Supp. Aff. ¶ 3- 5.) Villar asserts that he did not file an appeal because the Court did not adequately inform him of his rights

concerning a court-appointed lawyer on appeal, namely that the Court did not inform him that if he could not afford a lawyer for any appeal, that the Court would assign him a lawyer free of charge. He states that he did not appeal because he lacked money to hire his own lawyer and believed he had no further recourse. (Supp. Aff. ¶ 4-5.)

It is well-established that, after trial, indigent defendants have a constitutional right to counsel on their first appeal as of right. See Douglas v. California, 372 U.S. 353 (1963); Ross v. Moffit, 417 U.S. 600 (1974), (reaffirming this right, but limiting it to first appeals as of right); Evitts v. Lucey, 469 U.S. 387 (1985), (extending this right to include the effective assistance of counsel on appeal). The Second Circuit has held that not only does this right exist, but that there is an affirmative duty to ensure that the defendant is aware of this right. Smith v. McMann, 417 F. 2d 648, 654 (2d Cir. 1969)("The right to appeal at the expense of the state is mere illusion if the convicted indigent defendant does not know such a right exists.")

Only recently did the U.S. Supreme Court decide that, in addition to defendants who were found guilty at trial, the Douglas right to appellate counsel applies to defendants who were convicted based on a plea.[9] Halbert v. Michigan, 125 S. Ct. 2582 (2005) (extending the Douglas right to a defendant who plead nolo contendere).[10] Because Villar's allocution predates the Halbert decision, the law established in that opinion does not apply to Villar. See Teague v. Lane, 489 U.S. 288, 310-311 (1989)("new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced" . . . "[u]nless they fall within an exception to the general rule," such as rules that place "certain kinds

---

[9] See United States ex rel. Caruth v. La Vallee, 464 F.2d 449 (2d Cir. 1972), where the court refused to address the question of whether Douglas applied to appeals where defendants had initially pled guilty.
[10] The Court refused to accept that a plea amounted to an implicit waiver of the constitutionally guaranteed right to counsel on appeal. The Halbert opinion notes: "At the time he entered his plea, Halbert, in common with other defendants convicted on their pleas, had no recognized right to appointed appellate counsel he could elect to forgo." Halbert, 125 S. Ct. at 2594.

11

of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" and "watershed rules of criminal procedure.")(internal quotation marks omitted); Gilberti v. United States, 917 F.2d 92, 94 (2d Cir. 1990)(holding that Teague's standard limiting retroactivity on collateral review applies to federal prisoners).

Additionally, Villar has not suffered harm from his alleged lack of knowledge of this right to an appellate attorney. In his Memorandum of Law and Supporting Affidavit, Villar does not argue that he would have gone to trial initially were he informed of his right to an attorney on appeal. Rather, he contends that he would have filed a notice of appeal (after his sentencing) were he informed of this right.[11] Villar has not asserted that he would make any argument in such an appeal that he has not made before this Court. Since Villar has presented no meritorious arguments in this proceeding, Petitioner has not been prejudiced by not having made them on appeal. Therefore, Villar's failure to be advised that if he filed a notice of appeal he would be assigned a lawyer free of charge is harmless error and does not constitute grounds for granting Villar's petition.

---

[11] Petitioner leaves to the Court's discretion whether it was ineffective assistance of counsel for counsel not to file a notice of appeal. (Pet. Mem. at 6.) The terms of the plea agreement signed by counsel and Petitioner stated that Petitioner would not appeal if his sentence was within the stipulated guidelines range, which it was. (Final Plea Agmt. at 3, Gov. Opp. Letter, Ex. G.) Therefore counsel's statement that he would not file an appeal was in accord with his ethical obligations as an attorney.

## CONCLUSION

For the above reasons, Villar's petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is hereby dismissed.

IT IS SO ORDERED.

Dated: New York, New York
January 6, 2006

Robert P. Patterson, Jr.
U.S.D.J.

**Copies of this Opinion and Order sent to:**

Michael Garcia, United States Attorney
Southern District of New York
ATTN: Amy Orange Finzi
       Glen G. McGorty
One St. Andrew's Plaza
New York, NY 10007
Tel:   212-637-2338/2505
Fax:  212-637-0086

Jose Villar
#51881-054
L.S.C.I. Allenwood
P.O. Box 1000
White Dear, PA 17887-1000